Moses Ridley *vs.* Samuel J. Ridley, Administrator, &c.

A judgment cannot be rendered against a party unless he have notice of the suit against him; and this notice may be constructive, given in any way the legislature may direct.

In proceedings begun by attachment against a non-resident who does not appear and defend the suit, the judgment only operates *in rem,* and binds nothing but the property levied on.

In such proceedings, the seizure of the thing itself is deemed, in most cases, sufficient notice to all persons interested in it to come and assert their rights; and this is substituted in lieu of actual notice.

In this class of cases, the legislature sometimes directs a publication to be made; and when such provision is made by law, a judgment rendered without it would be erroneous, and perhaps void.

Where no publication is required, a judgment condemning the thing attached is valid, without any other notice than its seizure according to law.

The statute (Hutch. Code, 804, § 15,) provides, that the court, in attachments against non-residents, " may order notice of the attachment to be inserted in some newspaper in the State," &c.; and, it being discretionary with the court to make such publication, a failure to give notice does not render the judgment erroneous.

In error from the circuit court of Madison county; Hon. Robert C. Perry, judge.

The record shows, that the appellee, Samuel J. Ridley, sued out an attachment against the appellant in the circuit court of Madison county. Preparatory to obtaining the writ of attachment, Samuel J. Ridley made affidavit, " that Moses Ridley was justly indebted to him in the sum of $121,294 30-100, to the best of his knowledge and belief; and that the said Moses Ridley was not a resident of the said State of Mississippi, so that the ordinary process of the law could be served upon him," &c.

This affidavit was made on the 3d day of October, 1849.

The writ of attachment issued on the same day, returnable to the circuit court of said county on the 1st Monday of April, 1850.

On the 15th April, 1850, an order of publication was entered on the minutes of said court, requiring publication to be made

Ridley v. Ridley.

in the "Madisonian, a newspaper published in the town of Canton in said State of Mississippi, for four weeks successively; and that all further proceedings in said cause be stayed until the next term of said circuit court."

Judgment by default, with a writ of inquiry, was taken, on proof of this publication being made, on the 15th October, 1850; and the writ of inquiry was executed on the 17th. Verdict and judgment for $128,875.18 and costs. At the same term (21st October, 1850), Samuel H. Mulherrin came into court, and undertook that the said Samuel J. Ridley should make restitution of the goods and chattels attached, or the value thereof, if the said defendant, Moses Ridley, should, at any time within a year and a day, to be accounted from the time of awarding the said attachment, either in person or by attorney, appear to said action, and make it appear that the plaintiff hath been or is satisfied his debt, &c.

Moses Ridley sued out a writ of error, and brings the cause into this court.

*Lawson*, for plaintiff in error.

Does the record show, that the circuit court had jurisdiction over the person of Moses Ridley?

We maintain that it does not; but, on the contrary, shows that it had not jurisdiction.

Jurisdiction over the person of a defendant can be acquired only by actual notice or constructive notice. There was no summons or process ever served on Moses Ridley, and no proof that he had actual notice. The record establishes that he did not have actual notice, for there is nothing in it that even tends so to show. The court, then, did not have jurisdiction by having given the defendant actual notice.

All judgments rendered without notice are void; or, to say the least of them, voidable.

Was constructive notice given to the defendant, Moses Ridley, of the pendency of the attachment?

Where constructive notice is permitted to answer the ends of actual notice, nothing but the most exact compliance with the terms of the statute, substituting constructive for actual

55 *

notice, will be deemed sufficient for that purpose. "Any other rule might lead to disastrous consequences. To decide upon the rights of parties who have received no notice, is always full of hazard." *Eskridge* v. *Jones*, 1 S. & M. 596, and authorities cited. Constructive notice is the creature of statutory provision.

The suit at bar was commenced by attachment. The writ of attachment, by our statute, is made the leading process in the cause. (Hutch. Code, 801.) An attachment is but process to compel the appearance of the defendant. *Peters* v. *Tenney*, 12 S. & M. 455.

To ascertain, then, whether the court below had its process, which was the attachment, so executed as to give the constructive service required by our law, it is necessary to examine our statutory provisions in relation to attachments against non-residents.

The statute of 1822 gives the remedy against non-residents by attachment to our citizens, and points out the mode by which publication is to be made against them, so as to notify them of the pendency of the attachment. The language of the statute is, the court may order notice of the attachment to be inserted in some public newspaper within the State or Territory where the defendant is supposed to reside. Hutch. Code, 804, § 15. This clause of the statute does not specify for what length of time the publication shall be made; perhaps it was left to the sound discretion of the court; the law-makers, no doubt, believing that the publication would be made for a sufficient length of time to notify the absent defendant. The next clause, as to defendant's leaving the State, prescribes that the publication shall be made for four weeks in some newspaper most convenient to the place where the court is held; and the legislature certainly contemplated that the court, as to absent defendants, would publish for a longer time, as all proceedings are to be stayed not less than six months from the return day of the attachment, with the view of making publication possibly for that length of time.

The law of 1848, Hutch. Code, 823, if it have any application to cases of attachments against non-residents, prescribes

Ridley v. Ridley.

that publication shall be made for one month, but does not point out where the publication shall be made. This last law, then, leaves the law of 1822 in full force as to the place where the publication is to be made against non-residents in attachment suits, to wit, in the State or Territory where the defendant is supposed to reside.

The law of 1822, then, as to the place of publication being in force, uses this language : " The court may order publication to be made in some newspaper published in the State or Territory where the defendant is supposed to reside," &c. The affidavit for the attachment shows Moses Ridley to be a non-resident. The order of the court requiring publication to be made, stipulated that the notice should be inserted in the Madisonian, a newspaper published in the town of Canton, Madison county, and State of Mississippi.

There is no statute authorizing publication against non-residents whose effects have been attached otherwise than as before stated. No judgment can be rendered on the attachment without notice by publication. The right so to notify must be given by the statute, or it does not exist. The law substituting constructive for actual notice must be strictly complied with, or the notice will not give jurisdiction of the person. The only publication, then, which the law allows to be tantamount to notice is, by publishing in some newspaper in the State or Territory where the defendant is supposed to reside.

It may be said, this is discretionary with the court, as the statute uses the word *may* order publication, &c. Without this statutory provision, there is no mode pointed out by law of giving a non-resident defendant in attachment any notice; and without notice, the judgment would be void. Hence we conclude the word *may*, as used in the statute, is a command; it is imperative, and means must, or shall. " Wherever a statute directs the doing of a thing for the sake of justice or the public good, the word *may* is the same as shall.". 1 Vernon, 153, and notes, (*Beckwell's case.*) Dwarris on Statutes, 712, (9 Law Library, 53.)

Justice requires that every man shall have notice before he is condemned, either in property or person. " Indeed, so far does

the common law carry its dread of *ex parte* proceedings, it is one of its maxims, that he who decides, one party being unheard, does wrong, though he may decide right." 1 S. & M. 596.

. If we be right, the publication should have been made in some newspaper published out of this State, which, in the opinion of the court, was best calculated to apprise the defendant of the pendency of the attachment. This not having been done, the court acted without jurisdiction over the person of Moses Ridley.

. If the publication could have been made in some newspaper published in this State by law, (which we do not admit,) still the publication as made was defective. The law of 1848 requires the publication (Hutch. 823,) to be made for one month. In the case at bar, the first publication was on the 25th April, and the last 16th May, 1850; less than one month. The order of the court was, that notice be published for four weeks successively, instead of one month, as the statute requires.

The question then arises, is four weeks one month, in the language of statutes of modern times? Was a lunar, or a calendar month, meant by the legislature?

" In this country, the old English rule is considerably impaired, and the term month usually computed, and especially in statutes and judicial proceedings, as calendar." 4 Kent's Com. 96, note, and authorities cited. The authorities referred to in . Kent are, *Commonwealth* v. *Chambre*, 4 Dallas, 142; Tilghman, Ch. J., in 3 Serg. & R. 184; 2 Const. Rep., S. C., by Treadway, 604.

See, on this point, *Williamson* v. *Farrow*, 9 Bailey, 611; *Kimball* v. *Lamson*, 2 Ver. R. 142; *Pyle* v. *Maulding*, 7 J. J. Marsh. 207; 10 Wend. 393; *Avery* v. *Pixley*, 4 Mass. R. 460; 5 Grattan, 298. I have not the authorities cited by Kent to sustain his position, but suppose they fully sustain the position, or he would not have referred to them. Independent of the authorities he refers to, his own statement is entitled to much respect, and is considered of high authority in the judicial tribunals of this country. If the law be as quoted from Kent in note, then the statute, requiring publication for one month, was not com-

Ridley *v.* Ridley.

plied with, and the court below rendered judgment upon an insufficient notice; if so, it must be reversed.

The judgment upon verdict was rendered 17th October, 1850. On the third day of October, 1849, the attachment was issued and levied. On the 21st October, 1850, Samuel H. Mulherrin came into court and undertook, for Samuel J. Ridley, plaintiff in attachment, to restore the goods and chattels, or the value thereof, attached, to the defendant, Moses Ridley, if he should, within a year and a day, to be accounted from the time of the awarding the said attachment, appear and disprove the plaintiff's debt, &c.

Thus it appears, that more than a year and a day had elapsed from the time of awarding the attachment, (3d October, 1849,) when Mulherrin undertook for the plaintiff (21st October, 1850.) He then bound himself for nothing. More than the year and a day had elapsed when he became surety to restore the goods, &c., levied on. Hence it is manifest, that no security was given, as the statute requires, before the goods attached could be sold. The statute requires the plaintiff, after judgment is obtained upon any attachment against non-residents, before sale, to give security to the defendant to restore the goods or the value that have been attached, if he shall appear within a year and a day next following and disprove. Hutch. Code, 807.

This law was not complied with. Security was not given, as it requires; yet execution issued, and the attached property was sold by virtue thereof, which we think clearly erroneous. Our supreme court say, in the case of *Oldham* v. *Ledbetter*, 1 How. R. 49, " There is no reasonable ground to doubt that the legislature intended in all cases where either goods or chattels or lands are to be sold, or money to be paid by garnishee, bond with security should be given by the attaching creditor."

The attachment in chancery against non-residents, as given by our statute, is very similar to the attachment at law. In the case of *Freeman* v. *Malcom et al.*, 11 S. & M. 57, this court reverse a decree in chancery, because the decree itself omits to require security to be given, as the statute requires. Instead of pronouncing such decree as the court below should have pro-

nounced, this court reverse the whole decree, and remand the cause, that the defendant might be permitted to defend. If a similar rule should prevail in the case at bar, the omission to give the security must cause a reversal of at least the act of selling the property attached, if not the whole judgment. Story, Confl. Laws, § 549; *Brewer* v. *Harris*, 5 Grat. 285; *Weeks* v. *Hull*, 19 Conn. 376; *Avery* v. *Pixley*, 4 Mass. 460.

*A. H. Handy*, for defendant in error.

1. The statute (Hutch. Code, 804) does not imperatively require that publication should be made upon an attachment against a non-resident. It is discretionary with the court. The term is, *may;* and this, from the whole context both of this section and of other sections, shows that it was not imperative; for in all these sections, the term *shall* is employed in all instances where, from the nature of the thing to be done, it was made absolutely necessary to be done. See sections 15, 16, 26.

That it is discretionary, is abundantly manifest; because the court might not be advised as to what was the defendant's residence, and where the publication should be made; and the construction contended for by plaintiff's counsel would, then, compel the court to have publication made in " the State where the defendant is supposed to reside," when the court might have no information or reason to believe or " suppose " where the defendant resided.

The true principle and proper construction must be, that the court might order publication to be made, if, for any particular reasons appearing to the court, the purposes of justice shall require it.

And this is further manifest, from the fact that the 15th section makes no provision for the manner and length of time of publication. The whole matter, both as to the necessity of publication, and the manner and time, *is left to* the discretion of the court under the special circumstances of the case.

2. The act of 1848 (Hutch. 823, § 3) only applies to cases where the publication is absolutely necessary " to notify such party." It has no application to a case, where notice to the person, either actual or constructive, is not made indispensable.

Ridley *v.* Ridley.

3. This is a proceeding *in rem*, and in such cases no notice to the person is necessary.

Notice is given in law by attaching the thing itself. This is necessarily notice to all who have an interest in the thing itself. '9 Cranch, 144; 3 Phil. Evid. 907; Story's Confl. Laws, § 549. And this being the well settled law, fortifies' the position first above stated.

4. The writ of error here is to the judgment, and it is no objection to the judgment that no bond or security was given under the 26th sec. p. 807, Hutch. Dig. This is settled in 2 How. 649. *A fortiori*, where an improper bond was given.

5. It appears here, that substantial justice was done as to the publication, for it was made for four weeks at April term, 1850, and judgment was not rendered until October term, 1850.

6. This statute must be construed in the most liberal manner for the benefit of creditors. 12 S. & M. 514; Ib. 723; 13 S. & M. 284; Ib. 623.

7. It is said that the statute, 15th section, provides that judgment shall not be entered until after stay of proceedings, for at least six months, and that this provision was made in order that publication might be made. But we reply: 1st. If this was the object, and intended to be required, why was it not made imperative to give notice in like manner as it was made imperative to suspend proceedings? 2d. The suspension was in order that the party, after having the constructive notice for service of the attachment, might have time to appear and defend.

8. The judgment of the court showing that publication was made according to law, is the only thing that this court can regard as to the time of the notice; the proof of publication presented with the record not being a part of the record by bill of exceptions.

Mr. Justice YERGER delivered the opinion of the court.

This suit was commenced by attachment in the circuit court of Madison county, against Moses Ridley, as a non-resident under the provision of the 11th section of the act of June 7th, 1852. Hutch. Code, 801. That section provides, that attach-

Ridley v. Ridley.

ments at the suits of residents of the State shall issue against non-residents, having real or personal estate within it, "under the rules, regulations, and restrictions," that apply to attachments against absconding debtors, and directs that the like proceedings shall be had in each case.

The 16th section of the same act provides, in the case of absconding debtors, that notice of the suit shall be given for four weeks successively, in some newspaper published within this State, &c. Hutch. Code, 804.

The 15th section declares, that in suits prosecuted by attachment against the estate of persons residing out of the State, the court in which it is pending shall stay proceedings in it for such time as it may think necessary, not less than six months nor more than one year from the return day of the attachment. " And the court may order notice of the attachment to be inserted in some public newspaper, in the State wherein the defendant is supposed to reside," &c. Hutch. Code, 804.

In the case before us, notice for four weeks was by order of the court published in a newspaper in this State. No other publication was made, and it is said the judgment is erroneous, because no publication was ordered and made in the State wherein the defendant was supposed to reside.

It is certainly true, that no valid judgment can be rendered against a party, unless he have notice of the suit against him. But this notice need not be actually given, as in many instances constructive notice is substituted in lieu of actual, and this constructive notice may be given in any way the legislature may direct.

In some cases, the law directs publication in a newspaper; in others it directs that notice be posted at the door of the court-house; and in those cases where the judgment is to operate *in rem*, the statute is frequently silent on the subject of notice. In proceedings begun by attachment against non-residents who do not appear and defend the suit, the judgment only operates *in rem*, and only binds the property on which the attachment is levied.

In proceedings *in rem*, the seizure of the thing itself is

deemed in most instances sufficient notice to all parties interested in it, to come forward and assert their rights, and is substituted in lieu of actual notice. In this class of cases, the legislature sometimes directs a publication of some kind to be made; and, when the law makes such a provision, a judgment rendered without it would be erroneous, and perhaps void. But where no publication is required, a judgment condemning the thing is valid, without any other notice than its seizure according to law. In the statute under consideration, it is provided by the 15th section, that the court in attachments against non-residents, "may order notice of the attachment to be inserted in some newspaper, in the State or Territory wherein the defendant is supposed to reside." And it is contended that the word "may" should be construed as "shall;" and that instead of being discretionary, it is mandatory on the court to order this publication.

We cannot adopt this construction of the act.

The statute in which this clause appears, was not hastily adopted. Every word seems to have been deliberately chosen. When a mandate was intended, the appropriate word is used. For instance, in this 15th section, when direction is given in regard to the stay of proceedings, it is said, "the court shall stay proceedings." Again, in the 16th section, when publication is directed against absconding debtors, the statute declares "that it shall be the duty of the court to give notice." And throughout the whole statute, it will be seen that this phraseology is continued. We must, therefore, conclude that the word "may" was used in this instance by design; and that in using it, the legislature intended to leave it discretionary in the court to give the notice there referred to. A failure, therefore, to order and give such notice, does not render the judgment erroneous. This view is strengthened by the fact, that the law does not require the party suing out the attachment to state the residence of the defendant, a fact of which, in many instances, he might be ignorant.

Besides, the seizure of a man's property, in most instances, would give him more certain notice of the proceedings against it, than he would derive from any newspaper publication.

Upon the whole, we think the judgment should be affirmed. We have not intended to decide in this case, that no publication in a newspaper, in accordance with the provisions of the 16th section, was necessary. That question is not before us, as such publication was made in this case.

NOTE.— A re-argument in this case was prayed for by the counsel for plaintiff in error, but refused by the court.