GEORGE L. EAMES *vs.* SARAH S. SAVAGE.

Same *vs.* SAMUEL A. BICKFORD.

Somerset.    Opinion March 20, 1885.

*Executions against towns.    R. S., c. 84, § 30.    XIV amendment to U. S.
constitution.    Constitutional law.    Audita querela.*

R. S., c. 84, § 30, authorizing executions upon judgments against towns to be
issued against and levied upon the goods and chattels of the inhabitants, is
constitutional.

The process provided in that section is "due process of law," and is not in
conflict with the fourteenth amendment of the constitution of the United
States.

ON REPORT.

The first action is *audita querela* against a judgment creditor
of the town of Embden for wrongfully causing her execution
against the inhabitants of the town of Embden to be levied upon
the goods and chattels of the plaintiff, who was at that time, and
had been since August 15, 1881, one of the inhabitants of that
town.

The second action is trespass against the sheriff for the acts of
his deputy, N. F. Clapp, in serving the execution and levying
the same upon the plaintiff's property.

The original writ of *Sarah J. Savage* v. *Inhabitants of Embden,*
was dated July 12, 1882, and was to recover the amount of
certain coupons, due and unpaid, cut from town of Embden

bonds. Judgment was rendered thereon on default on the third Tuesday of December, 1882. That writ was not served upon this plaintiff, but was duly served upon the town clerk. The execution issued on that judgment January 5, 1883, and alias execution, August 6, 1883. Damages three hundred twenty-four dollars and thirty-three cents; costs, twelve dollars and seventy-five cents.

*J. J. Parlin* and *Strout and Holmes*, for the plaintiff.

Under the law of this country the property of an individual member of an ordinary corporation cannot be taken until he has been called upon to answer in a suit for that purpose. In most states of this Union process of the sort found by this case cannot issue under these circumstances. *Rees* v. *Watertown*, 19 Wall. 107; *Meriwether* v. *Garrett*, 102 U. S. 472.

It now remains to be inquired whether the same doctrine, which is held in the cases above cited, applies to municipal corporations, such as exist in this state. It is admitted that the practice has been to the contrary for perhaps two hundred years, but "it is not too late to go back to the true construction, and for the practice, if wrong, to be corrected." *Merchants' Bank* v. *Cook*, 4 Pick. 415; *Gross* v. *Rice*, 71 Maine, 251.

The English cases cited by the Massachusetts court as the foundation of the right to take property in this way, upon examination, do not appear to afford the authority which they have been supposed to. See *Russell* v. *Men of Devon*, 2 T. R. 667; *King* v. *Woburn*, 10 East, 395; *King* v. *Hardwick*, 11 East, 578; *Attorney General* v. *Exeter*, 2 Russ. 45; *Horner* v. *Dellinger*, 18 Fed. Rep. 495.

Another reason given for the adoption of this remedy, that towns have no common fund from which to satisfy judgments (*Riddle* v. *Prop'rs*, 7 Mass. 169,) is not true, in fact, as to most towns now. It is also said to rest on immemorial custom (*Chase* v. *Merrimack Bank*, 19 Pick. 564; *Hill* v. *Boston*, 122 Mass. 344; *Fernald* v. *Lewis*, 6 Maine, 264).

But that practice arose before towns were corporate bodies, and before the adoption of the constitution. And a custom

which is in conflict with the fundamental law must give way to it. See *Randall* v. *Smith*, 63 Maine, 105 ; *Taber* v. *Ins. Co.* 131 Mass. 239 ; *U. S.* v. *Buchanan*, 8 How. 83 ; *Walker* v. *Transportation Co.* 3 Wall. 150 ; *Thompson* v. *Riggs*, 5 Wall. 663.

This question has never been discussed in Massachusetts or Maine, upon its merits, as affected by the constitution of the United States. In Connecticut it rests upon the ground that towns are not corporations. *Beardsley* v. *Smith*, 16 Conn. 368 ; *Starr* v. *Starr*, 2 Root, 303 ; *Barkhamsted* v. *Parsons*, 3 Conn. 1 ; *McLoud* v. *Selby*, 10 Conn. 390 ; *Jewett* v. *Thames Bank*, 16 Conn. 511 ; *Union* v. *Crawford*, 19 Conn. 331 ; see also *Piper* v. *Moulton*, 72 Maine, 155 ; *State* v. *Stuart*, 23 Maine, 111 ; *State* v. *Woodward*, 34 Maine, 293 ; *Lufkin* v. *Haskell*, 3 Pick. 356 ; *Odiorne* v. *Wade*, 8 Pick. 518 ; *Hawkes* v. *Kennebeck*, 7 Mass. 461 ; *Brewer* v. *New Gloucester*, 14 Mass. 216 ; *Littlefield* v. *Greenfield*, 69 Maine, 86 ; *San Mateo Co.* v. *S. P. R. R. Co.* 13 Fed. Rep. 722 (8 Am. & Eng. R. R. Cas. 1) ; *Santa Clara Co.* v. *Same*, 18 Fed. Rep. 395 (13 Am. & Eng. R. R. Cas. 182).

Due process of law requires an orderly proceeding, adapted to the nature of the case, in which a citizen has an opportunity to be heard, to attend in court and defend his rights. This is absolutely essential. Same cases and *Green* v. *Briggs*, 1 Curt. C. C. 311 ; *Stuart* v. *Palmer*, 74 N. Y. 191.

The law does not afford any method for the inhabitant whose property lies exposed to this process to pay voluntarily and then recover of the town. *Crafts* v. *Elliotsville*, 47 Maine, 141 ; *Spencer* v. *Brighton*, 49 Maine, 326.

The system against which we are objecting is not a classification of property. It is not an excise upon any business, as in *Jones* v. *Savings Bank*, 66 Bank, 242 ; *State* v. *Tel. Co.* 73 Maine, 518 ; *State* v. *M. C. R. R.* 74 Maine, 376.

*A. H. Ware* and *D. D. Stewart*, for the defendants, cited : *Ross* v. *Watertown*, 19 Wall. 122 ; *Murray* v. *Hoboken L. & I. Co.* 18 How. 276 ; 5 Dane's Abr. 158, 561 ; *Keith* v. *Cong.*

*Parish*, 21 Pick. 261; *Riddle* v. *Prop'rs*, 7 Mass. 187; *Hawkes* v. *Kennebeck*, 7 Mass. 463; *Rumford* v. *Wood*, 13 Mass. 198; *Brewer* v. *New Gloucester*, 14 Mass. 216; *Mercy* v. *Clark*, 17 Mass. 330; *Merchants' Bank* v. *Cook*, 4 Pick. 414; *Chase* v. *Merrimack Bank*, 19 Pick. 568; *Gaskill* v. *Dudley*, 6 Met. 546; *Adams* v. *Wiscasset Bank*, 1 Maine, 361; *Fernald* v. *Lewis*, 6 Maine, 268; *Baileyville* v. *Lowell*, 20 Maine, 178; *Spencer* v. *Brighton*, 49 Maine, 326; *Hayford* v. *Everett*, 68 Maine, 507; *Beers* v. *Botsford*, 3 Day, (Conn.) 159; *Beardsley* v. *Smith*, 16 Conn. 368; *Hill* v. *Boston*, 122 Mass. 344; *Davidson* v. *N. O.* 96 U. S. 101; *Caldwell* v. *Blake*, 69 Maine, 458; *Piscataquis* v. *Kingsbury*, 73 Maine, 327; *Hathorn* v. *Calef*, 2 Wall. 10; *Ochiltree* v. *R. R. Co.* 21 Wall. 249; *Curran* v. *Arkansas*, 15 How. 304; *Leland* v. *Marsh*, 16 Mass. 391; *Child* v. *Coffin*, 17 Mass. 64; *Stedman* v. *Eveleth*, 6 Met. 115; *Coffin* v. *Rich*, 45 Maine, 507; *Pollard* v. *Bailey*, 20 Wall. 521; *Terry* v. *Little*, 101 U. S. 216; *Penniman's case*, 103 U. S. 714; *Wayman* v. *Southard*, 10 Wheat. 1; *Bank of U. S.* v. *Halstead*, 10 Wheat. 55; *Beers* v. *Haughton*, 9 Pet. 362; *Ross* v. *Duval*, 13 Pet. 45; *U. S.* v. *Knight*, 14 Pet. 301; *Amis* v. *Smith*, 16 Pet. 303; *U. S.* v. *Knight*, 3 Sumner, 366; *Supervisors* v. *Rogers*, 7 Wall. 180; *Riggs* v. *Johnson Co.* 6 Wall. 191; *Kelly* v. *Pittsburgh*, 104 U. S. 79; *Barkley* v. *Com'rs*, 93 U. S. 265; 2 Dillon Mun. Corp. § § 686, 672; 2 Kent's Com. 274.

EMERY, J. The plaintiff was an inhabitant of the town of Embden, at the time Sarah J. Savage began suit, and recovered judgment against that town in this court. The execution upon that judgment was issued, and was levied upon the plaintiff's goods, pursuant to R. S. of 1871, c. 84, § 29, now R. S., c. 84, § 30, which expressly provides that executions against towns shall be issued against the goods and chattels of the inhabitants thereof, and shall be levied upon such goods and chattels. The plaintiff, however, claims that the statute is forbidden, and made null by the last clause of § 6, of the Maine Bill of Rights, which declares that a person accused shall not "be deprived of his life,

liberty, property or privileges, but by the judgment of his peers, or by the law of the land," and also by that clause in § 1, of the fourteenth amendment to the constitution of the United States, which declares that no state shall "deprive any person of life, liberty, or property, without due process of law."

The presumption is the other way, in favor of the validity of the statute, and it is a presumption of great strength. All the judges and writers agree upon this. Chief Justice MARSHALL, in *Fletcher* v. *Peck*, 6 Cranch, 87, says that to overturn this presumption, the judges must be convinced, and "the conviction must be clear and strong." Judge WASHINGTON, in *Ogden* v. *Saunders*, 12 Wheat. 270, declared that if he rested his opinion on no other ground than a doubt, that alone would be a satisfactory vindication of an opinion in favor of the constitutionality of a statute. Chief Justice MELLEN, in *Lunt's case*, 6 Maine, 413, said, "The court will never pronounce a statute to be otherwise (than constitutional) unless in a case where the point is free from *all* doubt." This strong presumption is to be constantly borne in mind, in considering the question here presented.

The statute itself, in this case, has existed for half a century, since February 27, 1833, but it introduced no new principle or rule in the jurisprudence of this state. It merely affirmed a well known custom or law that had long before existed. The practice of bringing suits against a political division, or municipal organization, and collecting the judgment from the individuals composing it, is believed to have existed in England, and to have been brought thence to New England. Actions against "the hundred," were known as far back as Edw. I. Stat. 13, Edw. I, c. 2; 3 Comyn's Dig. Hundred, c. 2. As "the hundred" had no property, except that of individuals, the judgments must have been collected from the individuals. In *Russell* v. *Men of Devon*, 2 T. R. 667, Lord KENYON said, that indictments against counties were sanctioned by the common law, though they would be levied on the men of the county. In *Att'y Gen.* v. *Exeter*, 2 Russ. 45, the chancellor said: "If the fee farm was charged on the whole place called Exeter, he who was entitled to the

rent might have demanded it from any one who had a part of, or in the city, leaving the person who was thus called on, to obtain contributions from the other inhabitants as best he could. " In New England, the practice obtained from the earliest times, without any statute. " About the year 1790, one Gatehill was imprisoned on an execution against the town of Marblehead, for a debt the town owned. " 5 Dane's Ab. c. 143, Art. 5, § § 10, 11, p. 158. Mr. Dane, as early as his Abridgement, said the practice was justified " by immemorial usage. " *Ibid.* Such an imprisonment so soon after the revolution, when the principles of liberty were so freshly vindicated, would never have been permitted, had it not then been a familiar practice. The practice has been regarded as settled law in Massachusetts, and has been repeatedly alluded to in the opinions of the courts, as sanctioned by immemorial usage. *Riddle* v. *Proprietors on Merrimack River,* 7 Mass. 187 ; *Hawkes* v. *Kennebunk,* 7 Mass. 463 ; *Sch. Dist. in Rumford* v. *Wood,* 13 Mass. 198 ; *Brewer* v. *New Gloucester,* 14 Mass. 216 ; *Marcy* v. *Clark,* 17 Mass. 330, 335 ; *Merchants' Bank* v. *Cook,* 4 Pick. 414 ; *Chase* v. *Merrimack Bank,* 19 Pick. 568 ; *Gaskill* v. *Dudley,* 6 Met. 546 ; *Hill* v. *Boston,* 122 Mass. 344. The constitutionality of the law does not seem to have been really questioned till the case of *Chase* v. *Bank,* 19 Pick. 568, as late as 1837, and its constitutionality was there said to be so well established as not to be an open question. The people of Maine, while a part of Massachusetts, were familiar with the law and the practice. The Maine courts have repeatedly recognized it as long established, and as in harmony with the state constitution. *Adams* v. *Wiscasset Bank,* 1 Maine, 361 ; *Fernald* v. *Lewis,* 6 Maine, 268 ; *Baileyville* v. *Lowell,* 20 Maine, 178, 181 ; *Spencer* v. *Brighton,* 49 Maine, 326 ; *Hayford* v. *Everett,* 68 Maine, 507. Its constitutionality does not seem to have been questioned by the profession till *Shurtleff* v. *Wiscasset,* 74 Maine, 130. In Connecticut also, the antiquity and constitutionality of the law have been repeatedly affirmed. *Beers* v. *Botsford,* 3 Day, 159 ; *Beardsley* v. *Smith,* 16 Conn. 368.

That a statute, or rule of law, or custom, has so long existed, unquestioned, and has been so often invoked, and universally approved, and has become ingrained like this in the jurisprudence of a state, is a strong, if not conclusive reason, for pronouncing it constitutional, and a part of the "law of the land." *State* v. *Allen*, 2 McCord, 56; *Sears* v. *Cottrell*, 5 Mich. 251.

The plaintiff urges that such a method of enforcing executions against towns, arose out of the early theory that all the inhabitants were parties to the suit, and could appear personally and be heard. It is claimed that when New England towns were first formed, they did not have their present corporate character, that they were an aggregation of individuals, generally owning a large amount of territory in common, and with common rights and common liabilities in respect thereto. These individuals would necessarily be parties in any suit affecting their common liabilities, and execution must have issued against them as individuals. In the progress of time, such inhabitants were by statute made "bodies politic and corporate." (Mass. Laws of 1786.) Though they continued to be sued by the name of "the inhabitants of the town of —," the individuals no longer appeared in court, but the defence was conducted by the town as a unit, through its officers. The argument is, that the town having been made a corporation, and the individual inhabitant debarred from defending personally, he is entitled to his day in court, through some appropriate mesne process, before final process of execution can issue against his private property. It is claimed that a method of enforcing judgments against the inhabitants, which might not have been unjust, when such inhabitants were really parties, has become so, and therefore unconstitutional, since such inhabitants can defend only through a corporate organization. Towns, however, are not full corporations. They have no capital stock, and no shares. They are only quasi corporations, — created solely for political and municipal purposes, and given a quasi corporate character for convenience only. They remain still an aggregation of individuals dwelling within certain territorial limits, and under the direct jurisdiction of the legislature.

But legislatures, in creating purely private corporations, have an unquestioned power to prescribe the personal liability of a stockholder therein for corporate debts, and the method of enforcing it. They can limit this liability to the amount of his stock, or to his proportionate share, or can make him liable without limit. Morawetz on Corp. § 606, *et seq.* ; *Pollard* v. *Bailey*, 20 Wall. 520; *Hathorn* v. *Calef*, 2 Wall. 10. The common method of enforcement is by first recovering judgment against the corporation, and then bringing some specified process against the stockholder. But under such proceedings against him, the stockholder can not question the judgment against the corporation except for fraud. He is bound by such judgment until reversed. Morawetz on Corp. § 619; *Marsh* v. *Burroughs*, 1 Woods, 470; *Milliken* v. *Whitehouse*, 49 Maine, 527.

The proceedings against the person alleged to be stockholder, are to establish the fact that he is a stockholder, within the statute liability. In some instances, the statutes have permitted a judgment creditor of a corporation to determine for himself at his peril, (of course indemnifying the officer) what persons are stockholders. liable for the debt, and to levy the execution directly on the property of such person, without any intermediate process. The question of liability as stockholder, would then be tried in a suit against the officer. This latter mode of enforcement, though perhaps harsher than the other, has been repeatedly held to be constitutional and we do not know of any case holding otherwise. Morawetz on Corp. § § 618, 619 and notes; *Leland* v. *Marsh*, 16 Mass. 391; *Marcy* v. *Clark*, 17 Mass. 330; *Stedman* v. *Eveleth*, 6 Met. 115, 124 and 125; *Gray* v. *Coffin*, 9 Cush. 205; *Holyoke Bank* v. *Goodman Paper Co.* 9 Cush. 576. See also, *Merrill* v. *Suffolk Bank*, 31 Maine, 57; *Came* v. *Brigham*, 39 Maine, 35. In *Penniman's case*, 103 U. S. 714, the statute of Rhode Island, authorized the arrest of a stockholder, on an execution against the corporation. The constitutionality of the statute was directly affirmed by the state court and was assumed without question by the U. S. Supreme Court. The principle is analogous to that which permits a creditor holding an execution against A at his

peril to levy directly upon certain goods as the goods of A without first instituting any process to determine their ownership. If B's goods be taken, he has a remedy against the officer or can successfully resist him. A is not injured in either event. If the person whose goods are sought to be taken on an execution against a corporation is liable as stockholder for the debt, he is not injured thereby. If he is not liable, he has the same rights and remedies as B.

But the plaintiff urges, that whatever may have been the adjudications heretofore, upon this method of enforcing a judgment against a municipal or other corporation, by levying upon the property of any member, it is now forbidden by that clause of the fourteenth amendment to the United States constitution already quoted. He claims that " due process of law " as there used, requires a notice to him personally, and an opportunity for him to be heard in court, before execution issues against his property. The general proposition would be, that " due process of law " means judicial process with *judex, actor* and *rens*. This proposition may seem to be supported by some general remarks of judges, and writers, but no case in point is cited, nor indeed any direct assertion.

The phrase " due process of law " in the United States constitution, and in the constitutions of many of the states, and the phrase "law of the land," in the constitutions of others of the states including Maine, have long had the same meaning. 2 Coke's Inst. 50, 51. English political history is full of the strife between the crown and the people, the crown seeking to enlarge its irresponsible prerogatives, and the people insisting on fixed, and certain laws. The Magna Charta, and the various bills of rights, in which these phrases were used, were demanded from the kings, as safeguards against arbitrary action, against partial, or unequal decrees.

The barons and people, insisted on general laws, *legum terrae*, on uniformity, " due process of law." They insisted on law however harsh, as better security than the prerogative however indulgent. These phrases did not mean merciful, nor even just laws, but they did mean equal and general laws, fixed and certain.

The solicitude was to preserve the property of the subject from the inundation of the prerogative, Broom's Court, Law. 228. The English colonies in America were familiar with the conflict between customary law, and arbitrary prerogative, and claimed the protection of those charters. When they came to form independent governments, they sought to guard against arbitrary or unequal governmental action by inserting the same phrases in their constitutions.

They insisted that all proceedings against the individual or his property, should be uniform, and by general law. They put the same limitation upon the federal government in the fifth constitutional amendment. In commenting on these phrases Mr. Cooley cites with approval the language of Mr. Justice JOHNSON in *Bank of Columbia* v. *Otely,* 4 Wheat. 235. "As to the words from Magna Charta, incorporated into the constitution of Maryland, after volumes spoken and written with a view to their exposition, the good sense of mankind has settled down to this, that they were intended to secure the individual from the arbitrary exercise of the powers of govenment, unrestrained by the established principles of private rights and distributive justice." Cooley on Const. Lim. 355. Judge GREEN in *Bank* v. *Cooper,* 2 Yerger, 599, (24 Am. Dec. 523) said : "By 'law of the land' is meant, a general and public law, operating equally on every individual in the community." He also said that such was the opinion of the distinguished Judge CATRON, and of Lord COKE. Chief Justice HEMPHILL, in *Janes* v. *Reynolds,* 2 Texas, 251, said, "the terms 'law of the land' . . . are now in their most usual acceptation regarded as public laws, binding upon all the members of the community under all circumstances, and not partial or private laws." O'NEIL, J., in *State* v. *Simons,* 2 Speers, 767, said : "The words mean the common law, and the statute law existing in the state at the time of the adoption of the constitution."

But it has been expressly decided, that due process of law does not always mean judicial process. The individual's property is often taken for taxes without his being first warned and heard, and it is nowhere contended now that such summary process is

not due process of law. It is the fixed, certain process, applicable
to all, and not partial, nor unequal. *McMillen* v. *Anderson*, 95
U. S. 37. Mr. Justice MILLER in the opinion said: "By
summary is not meant arbitrary, or unequal, or illegal. It (the
collection of the tax) must, under our constitution, be lawfully
done. But that does not mean, nor does the phrase " due process
of law " mean, by a judicial proceeding. In *Murray* v. *Hoboken
Land Company* 18 Howard, 272, a warrant of distress was
issued by the solicitor of the treasury against the collector
of New York, upon a certificate of the first comptroller, that
the collector was indebted to the treasury. The collector
had not been notified nor heard so far as appears. The statute
authorizing such a process, was held constitutional. Judge
CURTIS, on page 276, said : " The constitution contains no descrip-
tion of those processes, which it was intended to allow or forbid.
It does not even declare what principles are to be applied to
ascertain whether it be due process." See also *Davidson* v. *New
Orleans*, 96 U. S. 97; *Walker* v. *Sauvinet*, 92 U. S. 90.

It does not follow that every statute is the "law of the land," nor
that every process authorized by a legislature is " due process of
law." It must not offend against " the established principles of
private rights and distributive justice." This statute does not. It
does not transfer A's property to B. It only makes A's property
liable to be taken for a debt, he in common with others, owes to
B. A can save his property by paying the judgment against
his town, which judgment binds him and all the other inhabitants,
and is a judgment he, and each of the others ought to pay.
Whether he pay or let his property be sold, he can recover full
damages of the town, and have the same final process for the
collection of his debt. In the end he only pays his rateable
share of the common debt. The statute is general, and is uniform
in its application, to every town, and every inhabitant. It may
not be in theoretical harmony with other methods of procedure,
but it accomplishes its laudable purpose, of compelling towns to
pay their debts, without doing any injustice. Towns readily
obtain credit at low rates of interest upon the strength of it,
and to now pronounce it void, would destroy their credit and

work wide spread disaster among those who have so confidently invested their savings in loans to towns.

The words " due process of law " in the fourteenth amendment do not have any enlarged, nor different meaning, from that heretofore ascribed to them. The amendment does not make federal law, and federal process of law, the "law of the land," and " due process of law " in each state. Whatever was due process of law in any state before the amendment, is due process of law in that state since the amendment. Before the amendment, the final determination of the question whether a state statute was according to the law of the land, rested with the courts of the state. Since the amendment it rests with the Supreme Court of the United States. It is through this operation of the amendment, that the citizen receives additional protection against unequal and partial laws.

The United States Supreme Court, in considering and determining such a question, will look mainly at the fundamental law, and general jurisprudence of the state. If the statute or process is found to be of ancient origin, to have been fully acquiesced in, to be general in its character, and impartial in its application, and interwoven with the business of the people, that court will not pronounce against it, because it is anomalous or has not been adopted elsewhere. The plaintiff cites *Rees* v. *Watertown*, 19 Wall. 107, and *Meriwether* v. *Garrett*, 102 U. S. 472, not as decisive or applicable authorities, but for some general observations in the opinions, upon " due process of law." In neither case was there a comparison of a state statute with the fourteenth amendment, and in both cases (19 Wall. 122, and 102 U. S. 519) the New England method of enforcing judgments against municipalities is expressly noticed as an exception to the application of the general observations quoted by plaintiff, and is not even incidentally condemned. Elsewhere in the opinions of the same court, this method has been alluded to, as actual, existing and binding law, and nowhere has it even by implication been declared contrary to the New England law of the land, or the fourteenth amendment. *Riggs* v. *Johnson County*, 6 Wall. 191;

*Supervisor* v. *Rogers,* 7 Wall. 180; *Barkley* v. *Levee Comr's,* 93 U. S. 295.

The statute in question must be held to be constitutional and unaffected by the fourteenth amendment.

*Judgment for the defendant in each case.*

PETERS, C. J., WALTON, DANFORTH, LIBBEY and FOSTER, JJ., concurred.