JAMES H. McLAUGHLIN *v.* HENRY M. BAHRE and THE SURETY ENGINEERING COMPANY, INC., a corporation of the State of Delaware.

(*May* 23, 1933.)

HARRINGTON and RICHARDS, J. J., sitting.

*Aaron Finger* (of Richards, Layton and Finger) for plaintiff.

*Christopher L. Ward, Jr.,* (of Marvel, Morford, Ward and Logan) and *John J. Morris, Jr.,* (of Hering and Morris) appeared specially for defendants.

Superior Court for New Castle County, Foreign Attachment, No. 218, September Term, 1932.

HARRINGTON, J., delivering the opinion óf the Court:

The statute in question, among other things, provides:

1. For the issúance of "a writ of foreign attachment * * * against any person not an inhabitant of this State" after a return to a summons or capias showing that the defendant cannot be found and proof satisfactory to the court of the cause of action, or upon affidavit made that the defendant resides out of the State and is justly indebted to the said plaintiff in a sum exceeding $50.

2. For the attachment of all the defendant's property, real and personal, that can be found in the jurisdiction, including shares of stock in any incorporated company.

3. For judgment against the defendant and an order for the sale of the property attached, unless the defendant shall appear generally· before the expiration of the second term after the issuance of the writ.

4. For the appearance of the defendant, the opening of the judgment entered against him, and a trial of the case on its merits in certain cases, on petition filed, and for good cause shown even after the expiration of the second term after the issuance of the writ.

Under his writ of attachment, issued pursuant to the provisions of this statute, and, also, pursuant to the provisions of *Sections* 95 and 96 of the *General Corporation Law* (as amended by 33 *Del. Laws, c.* 105, §§ 1, 2), the plaintiff seized certain stock in a Delaware Corporation which is alleged to belong to one of the defendants in the judgment entered in that proceeding.

It is conceded that the statute above referred to con-

tains no express provision for notice to the defendants in the attachment proceedings. By reason of that fact, the petitioners contend that it violates *Section* 1 of the 14*th Amendment to the Constitution of the United States,* and that any judgment based thereon is, therefore, void, though such judgment is not a judgment *in personam* and can only bind the property attached.

The plaintiff in the attachment judgment, on the other hand, points out that unless the defendant appears, no judgment can be entered against him until the second term after the issuance of the writ. He, therefore, contends that where the seizure of property in the jurisdiction is provided for and ample opportunity for the defendants to be heard before any judgment can be entered is, also, given by the statute, that it is valid and not in conflict with the *Fourteenth Amendment.*

*Section* 1 of the 14*th Amendment to the Constitution of the United States,* among other things, provides:

"* * * nor shall any State deprive any person of life, liberty, or property, without due process of law."

The fifth amendment to that *Constitution,* though said to be a limitation on the powers of the Federal Government, instead of on the rights and powers of the several states (*Wilson v. Balt. & Phila. R. Co.,* 5 *Del. Ch.* 524), also, among other things, provides that: "No person shall * * * be deprived of life, liberty, or property, without due process of law. * * *"

True, it has since been modified in some slight particulars for the benefit of the defendant, but, substantially, the same foreign attachment statute was before the Supreme Court of the United States in *Ownbey v. Morgan,* 256 *U. S.* 94, 41 *S. Ct.* 433, 65 *L. Ed.* 837, 17 *A. L. R.* 873. (For the proceedings in the same case, in both the Superior Court and the Supreme Court of this State, see, also, 6 *Boyce* [29 *Del.*] 379, 417, 100 *A.* 411, and 7 *Boyce* [30 *Del.*] 297, 105 *A.* 838).

The plaintiff in error in that case contended that the statute was invalid because under its provisions he was not permitted to appear and defend in the court below without entering special bail.

A slightly different phase of the due process clause of the 14th amendment was, therefore, before the court. That clause was, however, involved in the decision of the case and Mr. Justice Pitney, in delivering the opinion of the majority of the court, points out:

1. That the Federal Constitution contains no description of those processes which it was intended to allow or to forbid, nor does it even declare what principles are to be applied in determining what is due process of law.

2. That in determining whether a particular statutory or other proceeding is consistent with that clause of the 14th amendment, it is necessary, in the first instance, however, to examine the other provisions of the constitution in order to ascertain whether any of them are in conflict with the particular proceeding, or process in question.

3. That if there is no such conflict what is due process of law may be ascertained by an examination of those settled usages and modes of proceedings existing in the common and statute law of England, before the emigration of our ancestors, and shown not to have been unsuited to their civil or political conditions, by having been acted on by them, after the settlement of this country.

See, also, *Twining v. New Jersey,* 211 *U. S.* 78, 29 *S. Ct.* 14, 20, 53 *L. Ed.* 97, where the court, in discussing the same question of due process, not only applied the same rules but in more concise language, also, added: "A process of law, * * * which is not otherwise forbidden, must be taken to be due process of law, if it can show the sanction of settled usage both in England and in this country."

Our attention has not been called to any other pertinent clause of the constitution. In determining the mean-

ing of the Fourteenth Amendment perhaps we might, there-
fore, state that the phrase "due process of law" in the
Federal Constitution and the phrase "law of the land," as
used in *Magna Charta,* in the various subsequent bills of
rights in England, confirming or adding to that charter,
and in the State constitutions in this country, including
that of the State of Delaware (*Constitution* of 1897, *Art.* 1,
§ 7), have substantially the same meaning. *Eames v. Sav-
age,* 77 *Me.* 212, 52 *Am. Rep.* 751, citing 2 *Cokes Inst.* 50,
51; see, also, 2 *Cooley's Constitutional Limitations* (*8th
Ed.*) 733, etc.; *Wilson v. Balt. & Phila. R. R. Co.,* 5 *Del.
Ch.* 524.

As was, also, pointed out in *Eames v. Savage, supra,*
English political history is full of the strife between the
crown, and the barons and the people. The crown seeking
to enlarge its irresponsible prerogatives and the barons
and the people insisting upon fixed, and certain laws.

The *"Magna Charta,"* and the various bills of rights
in which the phrases above referred to were used, were
demanded from the kings as safeguards against arbitrary
action, against partial or unequal decrees.

The English colonies in America were familiar with
the long conflict between customary or established law on
the one hand and arbitrary prerogatives on the other, and
not only claimed the protection of the English charters and
bills of rights, but when they formed independent govern-
ments they sought to guard against arbitrary or unequal
governmental action by inserting the same phrases used
in them, in their constitutions. In other words, they pro-
vided in these instruments that all proceedings against the
individual, or his property, should be uniform and by
general law; and as we have already stated the same safe-
guards have now been inserted in the 14th Amendment.

To this general statement of the history of the due
process clauses perhaps we should add that, as we shall
hereafter see, there were also certain fixed and definite

basic principles, applicable to most cases, that could be invoked in determining whether the law of the land had been complied with. 2 *Cooley's Const. Lim.* 737; *Wilson v. Balt. & Phila. R. R. Co.,* 5 *Del. Ch.* 524. At any rate, this was true of legal proceedings of common law origin.

The statute in question contains no provision for notice to the defendant, other than by the seizure of his property, but like somewhat similar statutes in many of the other states, it was not only enacted in early Colonial times, but, also, traces its origin to a still more ancient but well established custom of London, of like nature; and which custom was confirmed from time to time by Royal Charter. *Ownbey v. Morgan,* 256 *U. S.* 94, 41 *S. Ct.* 433, 65 *L. Ed.* 837, 17 *A. L. R.* 873, *supra.* See, also, *Reybold v. Parker,* 6 *Houst.* 544; *Reynolds v. Howell,* 1 *Marv.* 52, 31 *A.* 875; *Fowler v. Dickson,* 1 *Boyce* (24 *Del.*) 113, 74 *A.* 601; 1 *Bouv. Law Dict.* 274; *Drake on Att.,* 1.

Under this custom it seems that no notice was served on the defendant in the attachment proceeding. 1 *Bouv. Law Dict.* 274; *Drake on Attachments,* 3, 4.

In fact, Lord Mansfield is said to have declared "that the very essence of the custom is that the defendant shall not have notice." *Drake on Attachments,* 3, *supra.*

If this be literally correct, in this, as well as in other respects, an attachment based on the custom of London differed from proceedings strictly in accordance with the common law, in which it was a fundamental rule that notice by service of process unless waived by appearance was necessary. *Drake on Attachments,* 3; 1 *Bouv. Law Dict.* 274; see, also, *Wilson v. Balt. & Phila. R. R. Co.,* 5 *Del. Ch.* 524.

Under the ancient custom of London, one of the objects of an attachment was to compel the appearance of the defendant, by sufficient sureties, to answer the plaintiff's demand. In the absence of appearance, the proceeding was,

however, in the nature of a proceeding *in rem*. *Drake on Attachments,* 4.

As already indicated, our statute carries out the same theory, as in the absence of an appearance by the defendant, it provides for a proceeding purely *quasi in rem,* in which the judgment can only bind the property seized under the writ. *Ownbey v. Morgan,* 256 *U. S.* 94, 41 *S. Ct.* 433, 65 *L. Ed.* 837, 17 *A. L. R.* 873, *supra.*

Fundamentally, the proceeding is based on the exclusive jurisdiction that each state has over property within its borders. *Ownbey v. Morgan,* 256 *U. S.* 94, 41 *S. Ct.* 433, 65 *L. Ed.* 837, 17 *A. L. R.* 873, *supra; Pennoyer v. Neff,* 95 *U. S.* 714, 24 *L. Ed.* 565; *Dorr v. Gibboney, et al., 7 Fed. Cas., page* 923, *Case No.* 4,006.

In this connection, the court, in *Pennington v. Fourth National Bank,* 243 *U. S.* 269, 37 *S. Ct.* 282, 283, 61 *L. Ed.* 713, *L. R. A.* 1917*F,* 1159, though in a somewhat different proceeding, in no sense based on the custom of London, aptly said: "Substituted service on a non-resident by publication furnishes no legal basis for a judgment *in personam. Pennoyer v. Neff,* 95 *U. S.* 714, 24 *L. Ed.* 565. But garnishment or foreign attachment is a proceeding *quasi in rem. Freeman v. Alderson,* 119 *U. S.* 185, 187, 7 *S. Ct.* 165, 30 *L. Ed.* 372, 373. The thing belonging to the absent defendant is seized and applied to the satisfaction of his obligation. The Federal Constitution presents no obstacle to the full exercise of this power. * * * The only essentials to the exercise of the state's power are presence of the *res* within its borders, its seizure at the commencement of proceedings, and the opportunity of the owner to be heard."

In that case a married woman had filed a petition for a divorce from her husband who was then absent from the state and who was, therefore, served by publication. The husband had a deposit in the Fourth National Bank in

Cincinnati and the wife, in asking for alimony, therefore, made that bank a party to the proceedings. The court awarded alimony to the wife and pursuant to its order the husband's balance in bank was paid to her. The husband, however, claimed that the seizure of such balance was contrary to the due process clause of the Constitution of the United States. He, therefore, sued the bank, but the Supreme Court held that the order, directing the seizure of his property, was valid and not in conflict with the due process clause of the fourteenth amendment.

It is true that there was not only seizure of property in the jurisdiction in the *Pennington Case,* but there was, also, notice by publication of process in the divorce action to which the other proceeding was an incident.

But whatever the strict rule under the ancient custom of London may have been, and whether based on the principles of constructive notice or not, the basic principles governing notice in actions *in rem* and actions in the nature thereof were long since laid down by the Supreme Court of the United States in *Pennoyer v. Neff,* 95 *U. S.* 714, 727, 24 *L. Ed.* 565.

That case involved a personal action but the court by way of dictum said:

"The law assumes that property is always in the possession of its owner, in person or by agent; and it proceeds upon the theory that its seizure will inform him, not only that it is taken into the custody of the court, but that he must look to any proceedings authorized by law upon such seizure for its condemnation and sale."

In *Cantor v. Sachs,* 18 *Del. Ch.* 359, 162 *A.* 73, the court pointed out that the same fundamental principles had, also, been laid down long before the decision of *Pennoyer v. Neff,* by the Federal Courts, in both *The Mary,* 9 *Cranch.* 126, 144, 3 *L. Ed.* 678, and *The Ann* (*D. C.*), 8 *F.* 923, 927, 5 *Hughes* 292.

In *The Mary* Chief Justice Marshall first stated in substance, that it was a principle of natural justice that the

rights of an individual would not be bound by a judicial sentence without notice of the proceedings, either actual or implied; but then said:

"Where these proceedings are against the person, notice is served personally, or by publication; where they are *in rem*, notice is served upon the thing itself. \* \* \* Every person, therefore, who could assert any title to the Mary, has constructive notice of her seizure. \* \* \*"

In *The Ann,* the court also, said:

"It is true that there was no notice by service or publication of notice, to the owner or holders of maritime or other liens, that the vessel was being proceeded against; but a proceeding *in rem* forms an exception to the general rule of notice, particularly when based upon actual manucaption of the thing \* \* \* and in such cases the seizure has been held to be constructive notice to every one having any interest in the thing seized."

As was, also, pointed out by the court in *Cantor v. Sachs, supra,* both of these cases were proceedings strictly *in rem,* but so far as this case is concerned, that would not seem to affect the principle involved.

In this connection, the court, in *Grannis v. Ordean,* 234 *U. S.* 393, 34 *S. Ct.* 779, 782, 58 *L. Ed.* 1363, quoting from *Pennoyer v. Neff,* 95 *U. S.* 714, 734, 24 *L. Ed.* 565, *supra,* said:

"It is true that, in a strict sense, a proceeding *in rem* is one taken directly against property and has for its object the disposition of the property, without reference to the title of individual claimants; but, in a larger and more general sense, the terms are applied to actions between parties, where the direct object is to reach and dispose of property owned by them, or of some interest therein. Such are cases commenced by attachment against the property of debtors, or instituted to partition real estate, foreclose a mortgage, or enforce a lien. So far as they affect property in the state, they are substantially proceedings *in rem* in the broader sense which we have mentioned."

See, also, *Pennington v. Fourth National Bank,* 243 *U. S.* 269, 37 *S. Ct.* 282, 61 *L. Ed.* 713, *L. R. A.* 1917F, 1159, *supra.*

*Cooper v. Reynolds,* 10 *Wall.* 308, 319, 19 *L. Ed.* 931, was decided some years after *The Mary* and *The Ann, supra,* but the court likewise held that seizure of the prop-

erty or some such equivalent act, subjecting it to the control of the court, was the foundation of the court's jurisdiction in a proceeding in the nature of a proceeding *in rem,* such as an attachment or garnishment proceeding.

In discussing the question of notice, the court used the following language:

"It seems to us that the seizure of the property, or that which * * * is the same in effect, the levy of the writ of attachment on it, is the one essential requisite to jurisdiction, as it unquestionably is in proceedings purely *in rem.*"

They further pointed out, however, that though the record did not clearly show that the provision of the attachment statute, requiring publication, had been complied with, and for that reason that the judgment might possibly be reversed on a writ of error, that such a defect would not be considered in a collateral proceeding like an action of ejectment to recover the land sold under an attachment proceeding.

In *Dorr v. Gibboney,* 7 *F. Cas. page* 923, *Case No.* 4,006, 3 *Hughes* 382, in which the validity of a Foreign Attachment proceeding under the statute of Virginia was considered collaterally, the court approved the rule previously laid down in *Pennoyer v. Neff, supra,* that "a seizure of the property under the laws of the state, and in the mode prescribed by them, is a species of notice to the nonresident or his agent."

This was followed by the statement that:

"The fundamental requisites of such jurisdiction must be sought in the terms of the statute. I will not deny that in such cases the state might prescribe the seizure alone as the ground of jurisdiction, but it is certainly more consonant with natural justice to give the party the benefit of a published summons."

*Windsor v. McVeigh,* 93 *U. S.* 274, 23 *L. Ed.* 914, recognizes the fact that seizure gives notice to the defendant on the same theory that is stated in the subsequent case of *Pennoyer v. Neff* and in the other cases above referred to,

but, by way of dictum, the Court also, in substance, said that before judgment could be entered against the property seized some additional notice of the proceedings in order to afford the defendant an opportunity to be heard, was necessary.

That limitation on the old rule was, however, not recognized as applicable to attachment cases based on the ancient custom of London, in the principles stated in the more recent case of *Herbert v. Bicknell*, 233 *U. S.* 70, 34 *S. Ct.* 562, 563, 58 *L. Ed.* 854.

In that case suit was brought in the district court of Honolulu June 30, 1909, and a debt due the defendant from a third person was seized on garnishee process.

*Section* 2114 of the *Statutes of Hawaii* (*Rev. Laws* 1905) provided:

"Such notice [i. e., service on the garnishee] shall be sufficient notice to the defendant to enable the plaintiff to bring his action to trial, unless the defendant be an inhabitant of this Territory, or has sometime resided therein, and then a like copy shall be served personally upon him, or left at his last and usual place of abode."

The plaintiff, therefore, not only served process on the garnishee but claiming to act pursuant to the statute, above referred to, also caused a copy of such process to be left at what he claimed was the defendant's last and usual place of abode in Hawaii, namely, at a rooming house in Honolulu. Judgment was entered against the defendant and on motion to vacate it both the District and Supreme Court of Hawaii refused to consider his denial, by affidavit, that he was a resident of Hawaii when the suit was brought, or that he had resided in Honolulu when he lived in that territory. The defendant in the affidavit filed by him in support of his motion admitted, however, that he had returned from Australia, though for a temporary stay in Hawaii, early in 1909 and had stayed for one month in January and February of that year in the rooming house in Honolulu where the copy of the notice was left. Apparently

based on the fact that he had stayed at that house at that time, the Hawaiian courts held that if the question were open for consideration the place where he had last stopped was his last and usual place of abode within the meaning of the statute. The Supreme Court of the United States affirmed the action of the lower court in refusing to vacate the judgment against the defendant and also refused to consider either the facts or the construction placed by the lower court on the Hawaii statute.

The contents of the notice left at what was held to be the defendant's last and usual place of abode, and whether informing or otherwise, does not appear; but the Court, among other things, said:

"Really the only matter before us that calls for a word is the decision that a judgment, appropriating property within the jurisdiction to payment of the owner's debt, which would be good if the property itself were the defendant, is not made bad by the short and somewhat illusory notice to the owner. Upon this point, the court below relied upon the above § 2114 and *Pennoyer v. Neff*, 95 *U. S.* 714, 727, 24 *L. Ed.* 565, 570."

They then adopted the language hereinabove quoted by us from *Pennoyer v. Neff*, adding the following significant statement:

"It has been said from of old that seizure is notice to the owner. *Scott v. Shearman*, 2 *W. Bl.* 977, 979, 11 *Eng. Rul. Cas.* 17; *Mankin v. Chandler*, *Fed. Cas. No.* 9030, 2 *Brock.* 125, 127. See *Cooper v. Reynolds*, 10 *Wall.* 308, 317, 19 *L. Ed.* 931, 932."

However pertinent some of the language used in the cases above cited may be, perhaps few, if any, of them directly involved the question as to whether some provision for notice, other than by seizure of the property, was essential in a statute based on the custom of London.

The language used in them, and especially in *Herbert v. Bicknell*, is, however, peculiarly applicable to this case; and as the Chancellor points out in *Cantor v. Sachs*, 18 *Del. Ch.* 359, 162 *A.* 73, *supra*, that case comes very near being decisive of the question before us, though a notice of some kind was served on the defendant.

True, corporate stock was not in the class of property that could be attached under the custom of London. This was because it was not then considered to be the kind of tangible property that was subject to seizure; but that rule has now been changed by statute. *Sections* 95, 96, *General Corporation Law,* as amended by 33 *Del Laws, c.* 105, *Sections* 1, 2; *Fowler v. Dickson,* 1 *Boyce* 113, 74 *A.* 601.

The defendants contend that stock is still so materially different in its nature from real tangible personal property that there is not the same implication of notice of the proceeding from its seizure. Admitting that neither *Sections* 95 nor 96 of the *General Corporation Law* provide for actual notice to the owner of the stock attached, it would seem, however, that his position in that respect does not materially differ from that of the defendant in the ordinary garnishment proceeding involving a debt due him or some other property belonging to him but in the hands of a third person. See *Mooney v. Berford & George Mfg. Co.,* 72 *F. R.* 32.

Viewed from the standpoint of abstract justice and absolute fairness to the defendant, some fair provision for notice other than by the implication to that effect arising from seizure, alone, may be desirable; but considering the history of the statute, it would seem that the fact that it does not contain any such provision does not make it invalid under the due process clause of the fourteenth amendment. In fact, there are cases that so hold. *Betancourt v. Eberlin, Admr.,* 71 *Ala.* 461; see, also, *Ridley v. Ridley,* 24 *Miss.* 648; *Simpson & Co. v. Knight,* 12 *Fla.* 144; *Kwilecki v. Homan,* 252 *Mo.* 624, 167 *S. W.* 989.

It must be conceded that, in addition to *Windsor v. McVeigh,* 93 *U. S.* 274, 277, 23 *L. Ed.* 914, *supra,* there are cases in the Supreme Court that contain dicta to the effect that notice of some sort, and in addition to that implied from seizure, is essential in a proceeding in the nature of

462

a proceeding *in rem. Hassall v. Wilcox,* 130 *U. S.* 493, 9 *S. Ct.* 590, 32 *L. Ed.* 1001; *Grannis v. Ordean,* 234 *U. S.* 385, 34 *S. Ct.* 779, 58 *L. Ed.* 1363; *Coe v. Armour Fertilizer Works,* 237 *U. S.* 413, 35 *S. Ct.* 625, 59 *L. Ed.* 1027; *Security Sav. Bank v. California,* 263 *U. S.* 282, 44 *S. Ct.* 108, 68 *L. Ed.* 301, 31 *A. L. R.* 391. See, also, 50 *L. R. A.* 597. None of these cases, however, like *Herbert v. Bicknell,* involved attachment proceedings wholly based on the custom of London, the principles of which, though not of common law origin, were, nevertheless, firmly embedded in the English law when this country was settled. *Ownbey v. Morgan,* 256 *U. S.* 94, 41 *S. Ct.* 433, 65 *L. Ed.* 837, 17 *A. L. R.* 873, *supra.*

Applying the principles above stated in *Pennoyer v. Neff* and in *Herbert v. Bicknell,* our conclusion, therefore, is that the seizure, or the statutory proceeding equivalent to it applied in this case, gave sufficient constructive notice of the proceeding to the defendant; and as judgment, under the provisions of the statute, could not be entered until the second term, the defendant had ample opportunity to be heard in his own behalf.

By reason of that fact, our conclusion is that the statute, in question, does not violate the due process clause of the Constitution and the petition of the defendants is dismissed.