JAMES C. MEEHAN, Appellant, v. UNION ELECTRIC LIGHT & POWER COMPANY et al.

Division One, December 6, 1913.

1. **NEGLIGENCE: Cause of Action: Street Parade: Protecting Rope.** A great annual festival in a great city, such as the Veiled Prophet's Parade in St. Louis, brings together on the sidewalks great crowds of people; and ropes and cables stretched along the line of sidewalks are not intended or required to be of a permanent character, but only temporary markers to warn the people not to enter upon the pavement, which is reserved for the parade; and the city, and an electric light company erecting such cables, have a right to assume that people viewing the parade will understand the temporary character of such markers; and the city and such company have no more reason to anticipate that the viewing crowd will violently surge against the rope than has a member thereof.

2. ———: ———: ———: ———: **Insecure Pole.** The petition states that a wire cable, stretched along the edge of the sidewalk to mark the boundary between the viewing crowd and a great parade, was fastened to an upright pole, which, on some day within the last eight days preceding the parade, had been constructed at the edge of the granitoid sidewalk; that the pole had been set in cement and stayed by means of four iron pins or bolts screwed into the pole's flange at its base; that the cement had not hardened, and the bolts were insecurely screwed and driven into said' sidewalk, and that in consequence the pole was insufficient to hold the wire rope, attached to it and stretched about four feet from the ground, when the people pressed against it; that as the parade approached, the people violently threw their weight against the rope, and the pole fell, striking plaintiff on the head, fracturing his skull and causing him permanent injuries. *Held*, that it cannot be reasonably said that the city and the electric light company which erected the pole should have anticipated that the cement in which the pole was set had not hardened within the eight days preceding the accident, or that the weight of the people against the cable would have been sufficiently great to cause the pole to fall, and the petition states no negligence on the part of either city or company.

·Appeal from St. Louis City Circuit Court.—*Hon. George H. Williams,* Judge.

AFFIRMED.

*Joseph A. Wright* for appellant.

(1) "A city owns and controls its streets as a trustee for the public. It, therefore, stands charged by the law with the primary and bounden duty of keeping them free from nuisances, defects, and obstructions caused by itself or by third parties if it (in the latter instance) had actual or constructive notice thereof in time to abate the nuisance, remove the obstruction or repair the defect. It cannot shirk that duty or shift it over to, or halve it with, others. So much is clear law in Missouri." Benton v. St. Louis, 217 Mo. 700; Mehan v. St. Louis, 217 Mo. 35; 2 Elliott on Roads and Streets (3 Ed.), pars. 830, 831; 1 Wood on Nuisances, secs. 248-250. (2) The defendants all

co-operated and participated in creating the peril to which plaintiff was exposed and are, therefore, jointly and severally liable. Mehan v. St. Louis, 217 Mo. 35; Hollis v. Merchants' Assn., 205 Mo. 508. (3) The negligent acts averred were the proximate cause of plaintiff's injury. Woodson v. Railroad, 224 Mo. 856, 30 L. R. A. (N. S.) 931; Phillips v. Railroad, 211 Mo. 419; Dean v. Railroad, 199 Mo. 386. (4) Defendants are liable for a peril created and injury done to plaintiff even though the motive was the entertainment of visitors within the city. Hollis v. Merchants' Assn., 205 Mo. 508; Dowell v. Guthrie, 99 Mo. 653; Wheeler v. Ft. Dodge, 131 Iowa, 566; Johnson v. New York, 186 N. Y. 139; Landau v. New York, 180 N. Y. 72; Richmond v. Smith, 101 Va. 161; Elam v. Mt. Sterling, 20 L. R. A. (N. S.) 512; Little v. Madison, 42 Wis. 643; Shinnick v. Marshalltown, 137 Iowa, 72.

*Schnurmacher & Rassieur* for respondent, Union Electric Light & Power Company.

(1) As to Union Electric Light & Power Company, the petition avers in substance merely that pursuant to a contract between it and the city of St. Louis for the lighting of certain streets, it erected the pole in question, and before the cement in which it was placed had set and hardened the other defendants fastened an iron cable thereto and to other poles in the line and that owing to the heavy and violent pressure against the cable by the throng of people, assembled to witness the parade, the pole was caused to fall. Accepting as true all of the allegations, they do not state such facts as would warrant a judgment against this defendant. There is no averment that this defendant erected the pole which fell for any purpose other than furnishing light under its general contract with the city for lighting certain streets, and there is no averment that the pole was not well and sufficiently set for

that purpose. The allegation is that the pole was "insufficient and insecurely fastened to withstand the pressure of a large crowd of persons upon said iron rope or cable attached thereto," but there is no allegation that the Union Electric Light & Power Company knew the pole was to be put to any such use or subjected to any such pressure. As to this defendant, therefore, the demurrer was properly sustained. (2) The petition seeks to charge three defendants as tort-feasors. "While joint tort-feasors are severally liable for the injuries inflicted, yet to hold them jointly liable they either must have acted in concert or the act of one must have been of such a character as to have naturally resulted in causing the act of the other." Stanley v. Railroad, 114 Mo. 606; Wiest v. Philadelphia, 200 Pa. St. 148; 29 Cyc. 488. The allegations of the petition show no joint negligence of the Union Electric Light & Power Company with the other defendants, or with either of them. It erected a pole for ordinary lighting purposes; not for the purpose of supporting cables "to withstand the pressure of a large crowd." Its act, even if negligent, was a separate and not a concurring act. (3) The petition shows that the act of the defendant city, in causing the erection of the pole and in stringing the cable, was a proper exercise of the police power, and therefore not unlawful. Hesselbach v. St. Louis, 179 Mo. 505; Simon v. Atlanta, 67 Ga. 618. (4) Even if the act charged against the Union Electric Light & Power Company amounts to negligence, yet it was not the proximate cause of the accident, and therefore no case is stated against the Electric Company. Haley v. Transit Co., 179 Mo. 30; Railroad v. Kellogg, 94 U. S. 475. (5) Negligence is not the proximate cause of an accident, unless, under the circumstances, the accident was the probable and natural consequence, and was such as might and ought to have been foreseen by the defendant charged with such negligence. Strack v. Tel. Co., 216 Mo. 601; Paden v.

Van Blarcom, 181 Mo. 127; Haley v. Railroad, 179 Mo. 30; Warner v. Railroad, 178 Mo. 125; Fuchs v. St. Louis, 167 Mo. 620; Brewing Assn. v. Talbot, 141 Mo. 674; Mathiáson v. Mayer, 90 Mo. 585.

*Seddon & Holland* for respondent, Bell Telephone Company.

(1) The amended petition of plaintiff does not state a cause of action against the Bell Telephone Company, because it contains no averment that the servants of defendant, Bell Telephone Company, at the time in question, were acting in the course of the discharge of the duties of their employment. McPeak v. Railroad, 128 Mo. 636. (2) The amended petition of plaintiff does not state a cause of action against the Bell Telephone Company, because it contains no allegation that the cable in question was not reasonably sufficient for the purpose for which it was furnished. Sindlinger v. Kansas City, 126 Mo. 315; Kelly v. Lawrence, 195 Mo. 75; Roberts v. Tel. Co., 166 Mo. 369; Tel. Co. v. Speicher, 59 N. J. 123; York v. Railroad, 117 Mo. 405. (3) The amended petition of plaintiff does not state a cause of action against the Bell Telephone Company, because it appears upon the face of said petition that the happening therein described could not reasonably have been anticipated by said defendant. Graney v. Railroad, 157 Mo. 666; Brewing Assn. v. Talbot, 141 Mo. 674; Goodrich v. Railroad, 152 Mo. 222; Hysell v. Swift, 78 Mo. App. 39; Lohring v. Construction Co., 94 S. W. 747. (4) The amended petition of plaintiff does not state a cause of action against the Bell Telephone Company, because it appears from said petition that the Telephone Company, if acting at all in the premises, was merely acting as the agent of the city. Under such circumstances, it would not be held liable to third persons for acts of nonfeasance. O'Neil v. Young, 58 Mo. App. 628; Harriman v. Stowe, 57 Mo.

93; Steinhauser v. Spraul, 127 Mo. 541; Kelly v. Railroad, 122 Fed. 286.

*William E. Baird* for respondent, City of St. Louis.

(1)   Municipal authorities may properly withdraw from general use a part of the highway upon such occasions as the safety and comfort of the public demand.   Hesselbach v. St. Louis, 179 Mo. 505; Simon v. Atlanta, 67 Ga. 618.   (2) The petition shows, that a great public celebration had been planned and the stringing of the wire, so far from being a nuisance was a wise precaution for the comfort of spectators and in order to prevent an interruption of the ceremonies.   Simon v. Atlanta, 67 Ga. 618; Dillon Mun. Corp. (5 Ed.), sec. 1174.   (3) In placing the wire as a warning or guard, the city was not acting in its corporate capacity, but was exercising its police power and therefore is not liable for any alleged negligence.   Williams, Liab. for Municipal Tort, p. 16; Heller v. Sedalia, 53 Mo. 153; Armstrong v. Brunswick, 79 Mo. 319; Kiley v. Kansas City, 87 Mo. 103; Murtaugh v. St. Louis, 44 Mo. 479; Welsh v. Rutland, 56 Vt. 228.

WOODSON, P. J.—This was a suit instituted in the circuit court of the city of St. Louis, by the plaintiff against the defendants, to recover the sum of $25,-000 damages alleged to have been received by him  for personal injuries, inflicted by the alleged negligence of the latter.

The defendants separately filed demurrers to the petition, which were by the circuit court sustained; and plaintiff declining to plead further, judgment was duly rendered against him, from which he timely appealed to this court.

In the very nature of things this state of the record and the legal propositions presented thereby for determination, calls for a careful consideration of the petition.

It reads as follows (formal parts omitted) :

"Plaintiff, by leave of court first obtained, files this his second amended petition, and for cause of action against defendants, states:

"That defendant Union Electric Light & Power Company is and was at all times hereinafter mentioned, a corporation duly organized and existing under the laws of the State of Missouri and engaged in furnishing light and power for hire in the city of St. Louis, Missouri.

"That defendant Bell Telephone Company of Missouri is and was at all times hereinafter mentioned, a corporation duly organized and existing under the laws of the State of Missouri, and engaged in operating a telephone system and in stringing and maintaining wires and cables, along and over the streets of the city of St. Louis, Missouri.

"That defendant city of St. Louis is and was at all times hereinafter mentioned, a municipal corporation, duly organized and existing under the laws of the State of Missouri and having charge of numerous streets in the city of St. Louis, State of Missouri.

"That plaintiff James C. Meehan, is and was at all times hereinafter mentioned, a resident of the city of Decatur, State of Illinois, and employed as general foreman in the car department of the Wabash Railroad Company at said place.

"That prior to the injuries hereinafter complained of and on the ―― day of ――, 1909, defendant Union Electric Light & Power Company and city of St. Louis, for a valuable and sufficient consideration, entered into a contract for the lighting by Union Electric Light & Power Company, of certain streets within the downtown business district of the city of St. Louis by means of electric lights supported on large, heavy iron poles or standards, about twenty feet high, placed or erected at or near the curb of the streets.

"That included in the streets thus embraced in said contract, is and was Twelfth street in the city of St. Louis, Missouri, and that on or about the 27th day of September, 1909, the city of St. Louis, through its lighting department, issued a permit to the Union Electric Light & Power Company to erect and maintain a line of iron poles or standards supporting electric lights as provided by said contract, and hereinbefore described, along Twelfth street in the city of St. Louis, State of Missouri, and between Locust street and St. Charles street.

"That on or about July 24, 1908, the Municipal Assembly of the city of St. Louis adopted the following concurrent resolution:

" 'Whereas the attention of the Municipal Assembly has been called to the fact that November 9, 1909, will mark the one hundredth anniversary of the incorporation of St. Louis as a town; and

" 'Whereas, this event in the city's history should be officially recognized and appropriately observed by a celebration, participated in by all of our citizens, therefore, be it.

" 'Resolved, by the Council, the House concurring therein, that a committee of three from each house of the Municipal Assembly be appointed and that his Honor, the Mayor, be requested to call a meeting of the presidents of all the business, civic and professional organizations in the city to meet with the joint committee of the Municipal Assembly to arrange a plan for a dignified and appropriate celebration of the important event.'

"That thereafter, on or about May 14, 1909, the Municipal Assembly of the city of St. Louis adopted the following concurrent resolution:

" 'Whereas, the Municipal Assembly by joint resolution has declared that the one hundredth anniversary of the incorporation of St. Louis "should be offi-

cially recognized and appropriately observed by a cele-
bration participated in by all of our citizens," and

"'Whereas, the Mayor, in response to the request
embodied in said joint resolution, called a "meeting
of the presidents of all the business, civic and profes-
sional organizations in the city to meet with the joint
committee of the Municipal Assembly to arrange a
plan for a dignified and appropriate celebration of this
important event," and

"'Whereas, the joint committee of the Municipal
Assembly, and the presidents of the business, civic and
professional organizations have organized the St.
Louis Centennial Association, with the Mayor of the
city as president of said association, and

"'Whereas, the plan for "a dignified and appro-
priate celebration of this important event" has been
received with marked approval by the citizens of St.
Louis, and

"'Whereas, the Centennial Association has ad-
vanced in its preparations sufficiently to indicate that
the celebration will be worthy of the city's one hun-
dred years of progress since incorporation, now, there-
fore, be it and it is hereby

"'Resolved, that the Honorable Mayor of the city
of St. Louis be requested by the city council to extend
to mayors of municipalities and to such other guests
as he may see fit, invitations to visit St. Louis during
the week October 3-9, 1909, and to participate in the
celebration.'

"That under and by virtue of said concurrent res-
olution, St. Louis Centennial Association was organ-
ized, being an unincorporated body composed of about
one hundred members and of which His Honor, the
Mayor of St. Louis, was president.

"That the week beginning Sunday, October 3,
1909, pursuant to said resolutions, was known in the
city of St. Louis and the territory tributary thereto
as Centennial Week, with numerous attractions of a

national character, consisting of the Veiled Prophet's, Industrial, Civic and Historical Parades, which were arranged for and advertised to take place by said St. Louis Centennial Association, in said city of St. Louis, Missouri, during said week, and said St. Louis Centennial Association invited and caused to be invited, by causing newspaper accounts of said attractions, and urging the public to attend, to be published in the city of St. Louis, and territory tributary thereto, the people generally, in the United States, and particularly in the territory tributary to the city of St. Louis, to visit the city during said week and to enjoy and participate in its festivities.

"That among the attractions advertised for Centennial Week, by said St. Louis Centennial Association, was the Veiled Prophet's Parade, on the evening of October 5, 1909, which consisted of a large number of gorgeous floats brilliantly illuminated, which said floats were propelled by means of electricity on and along the street railway tracks in the city of St. Louis, Missouri, in a procession, and passing, and so advertised to pass, and was so known to the defendants at the time of and long prior to the injuries complained of, along Twelfth street, between Locust and St. Charles streets in the city of St. Louis, Missouri.

"That in the street, and near the curb along Twelfth street and between Locust and St. Charles streets, large reviewing stands had been erected with a view to accommodate parties wishing to view advantageously the Veiled Prophet's Parade, and that said reviewing stands, and the streets and sidewalks adjacent thereto, were known as the Court of Honor, and was one of the principal places for witnessing said parade in the city of St. Louis, and was calculated to, and was so known to the defendants, or by the exercise of ordinary care might have been so known to them, to attract large crowds on the evening of said Veiled Prophet's Parade.

"That between the 27th day of September, 1909, and October 5, 1909, the exact date this plaintiff is unable to state, Union Electric Light & Power Company, under its said contract with the city of St. Louis, and said permit, erected on the said sidewalk near the curb on the west side of Twelfth street, between Locust and St. Charles streets, in the city of St. Louis, a large iron pole or standard supporting an electric light of the character hereinbefore described, together with other poles of the same type, placed along Twelfth street at convenient distances.

"That prior to the injuries hereinafter complained of and on or about the—day of October, 1909, the city of St. Louis and Bell Telephone Company of Missouri, strung along Twelfth street on the west side thereof an iron cable attached to said pole hereinbefore described located near the curb on Twelfth street, between Locust and St. Charles streets, and ran and connected a said wire cable to the next succeeding pole, on the north side of the pole which fell, hereinbefore particularly described and designated, and which fell, as hereinafter alleged; that said iron rope or cable was strung along the edge of the sidewalk and at a height of about four feet therefrom, and was designed and intended by defendants herein, to prevent large crowds then and there to assemble during Centennial Week, to witness said attractions, from crowding one another off the sidewalk into the street.

"That the particular iron pole or standard hereinbefore described erected by the Union Electric Light & Power Company was, at the time of the injury hereinafter complained of, and was so known to the defendants and each of them, or by the exercise of ordinary care might have been so known to them and each of them, to have been insufficiently and insecurely fastened to withstand the pressure of a large crowd of persons upon said iron rope or cable thereto attached, in this, to-wit:  that said pole or standard had been

negligently erected by defendant Union Electric Light & Power Company upon the granitoid sidewalk at said point between the dates hereinbefore alleged, by reason of the cement at and within the base of said pole or standard not having been allowed to remain a period of time sufficient to enable said cement to harden and hold firm and support said pole or standard, and that there was left as practically the sole support thereof, four iron pins or bolts by which the base of said pole or standard was attached to the granitoid sidewalk as aforesaid, and that said pins or bolts and the threads upon the same were not sufficient to secure said pole or standard without the cement protection as aforesaid, and that said pins or bolts were insecurely driven, screwed and placed in said base and sidewalk, all under the circumstances herein alleged, and that by reason thereof, said pole or standard was insecure and insufficient to hold said pole or standard, under the excitement and interest arising by the approach and passing of said Veiled Prophet's Parade, and defendants knew that, for the purpose of witnessing said Veiled Prophet's Parade approach and pass at said point, a large crowd was liable to assemble and to press heavily upon said wire and pole or standard, causing it to fall and injure persons on the sidewalk, or by the exercise of ordinary care said facts might have been so known to the defendants, and each of them, and thereby rendered said sidewalk and street then and there perilous and dangerous to persons thereon.

"Plaintiff further alleges that said iron cable strung for the purpose and under the circumstances herein alleged, was carelessly and negligently strung in this: That defendants, city of St. Louis and Bell Telephone Company of Missouri, knew or by the exercise of ordinary care could have known that said iron pole or standard which fell had been negligently erected by defendant, Union Electric Light & Power Company

as herein alleged; and plaintiff alleges that said defendant, Union Electric Light & Power Company, negligently suffered and allowed said iron cable to be thus strung and attached to the said pole or standard which fell and which had by it been carelessly and negligently erected, as herein alleged.

"That the plaintiff (in response to said general invitation given through the public press of St. Louis as aforesaid, visited St. Louis on October 5, 1909, and while he, thus invited, on the evening of said mentioned day) was lawfully and properly standing on the sidewalk on Twelfth street between Locust and St. Charles streets, and in close proximity to said iron pole or standard, negligently erected and herein particularly described, and with said iron cable carelessly and negligently attached and fastened to said iron pole or standard thus insufficient and insecure as hereinbefore alleged, rendering his lawful position on the street unsafe and dangerous under the circumstances herein alleged, upon an outcry that the parade was coming, the large crowd then and there assembled upon the sidewalk, pushed forward heavily and violently against said iron cable and thereby and by reason of the carelessness and negligence of defendants herein alleged, caused said iron pole or standard to fall, striking plaintiff with great force and violence upon the head, knocking him unconscious, severely and permanently fracturing his skull and bruising and contusing his breast, and greatly and permanently shocking his nervous system.

"That by reason of the injuries thus sustained, plaintiff has suffered, and will in the future suffer, great pain of the body and mind; his hearing has been permanently impaired; his head is and will be permanently scarred and disfigured; he has lost and will in the future lose the earnings of his labor; he has incurred and become obligated for, and will in the future incur and become obligated for, large expenses for

medicines, medical attention and nursing, all to his injury and damage in the sum of twenty-five thousand dollars, for which sum he asks judgment against defendants, and for costs.''

The demurrer of the city was as follows (captions and signatures omitted):

''Now comes the city of St. Louis, one of the defendants in the above entitled cause, and demurs to the second amended petition filed herein, and for ground of its demurrer says that said second amended petition does not state facts sufficient to constitute a cause of action against this defendant, the city of St. Louis.''

On April 5, 1910, and during said April Term, defendant Bell Telephone Company of Missouri filed its demurrer thereto, as follows:

''Now comes the Bell Telephone Company and demurs to the second amended petition of plaintiff filed herein. And for ground of its said demurrer said defendant assigns that said petition does not state facts sufficient to constitute a cause of action against said defendant.''

And that of the Electric Light Company was as follows (caption and signatures omitted):

''Comes the above named defendant Union Electric Light & Power Company, and demurs to the second amended petition herein and for ground of demurrer shows:

''1.   The petition does not state facts sufficient to constitute a cause of action against this defendant.

''2.   The said petition on its face shows that the defendants created no obstruction to or nuisance in the street and place mentioned in said petition, and that what was done by defendants was a proper and lawful police regulation and for the public good and safety.

''4.   The petition on its face shows that the alleged damage to plaintiff was not the proximate re-

sult of the act of this defendant as set forth in said petition.

"5.   The said petition on its face shows that the accident to plaintiff was manifestly an extraordinary one, arising from extraordinary conditions, and beyond such foresight as could be reasonably required to be anticipated.

"6.   The said petition on its face shows that plaintiff could have as easily anticipated the consequences of the unusual condition resulting in the accident to him as could have this defendant, and by placing himself in the way of danger plaintiff was himself lacking in due care under the circumstances mentioned and set forth in said petition."

Counsel for all parties have presented many legal propositions, and have learnedly briefed and argued the same in this court; but the view we have taken of the case renders it unnecessary for us to consider but one of them, and that is, does the petition state facts sufficient to constitute a cause of action against any or all of the defendants?

Negligence: Street Parade: Protecting Rope.

Counsel for plaintiff maintain the affirmative of this proposition, while those for the defendants insist upon the negative thereof.

In our opinion the circuit court properly held that the petition failed to state a cause of action against any one or more of the defendants, and our reasons for so stating are as follows:

The petition discloses the facts that the plaintiff was injured during the celebration of the one hundredth anniversary of the city of St. Louis; and that the Veiled Prophet's Parade, among other things, was a part of the ceremonies—the fame of which, as the petition alleges, and as all know, has become national, and as the petition also alleges, which is also current history, or common knowledge, brings together large crowds of people, so vast in number that great prepara-

tions must be and are made for their entertainment in
the public streets of the city, consisting of reviewing
stands, with roofs and cables stretched along the curbs
and outer edge of the sidewalks, as warnings to pre-
vent the crowds of people from encroaching upon the
streets in front of the parade in its passage.

We cannot shut our eyes to the fact that the pa-
rade mentioned in the petition passes along many
miles of the streets of the city, and that the crowds
consist, as the petition alleges, of great numbers, and
as all know, hundreds of thousands who line the side-
walks practically throughout the length of the parade.

The petition alleges that ropes or cables men-
tioned are designed as barriers, barricading the peo-
ple lining the sidewalks from encroaching upon the
street proper, which is reserved for the passage of the
pageantry. Concede, as we must, that to be true, yet
they must in the very nature of the case be temporary
in character and frail in structure, and are not intended
as fences or barricades to physically or forcibly keep
the crowds of people on the sidewalks from encroach-
ing upon the street.

We must read the petition in the light of common
knowledge regarding such matters, and that is, these
barriers are intended only for the purpose of warn-
ing the people that they must not pass that line, for
the reason that the street proper is reserved for the
pageantry; and not a barricade in the technical sense to
retard or bar an enemy or a crowd which is bent upon
entering the street. If that was the intention, then
the cable would be wholly useless, because they could
easily pass over or under the cable.

All of the respondents had a right to presume that
the people viewing the parade understood the charac-
ter and purpose of the cable or rope mentioned, and
that they would act accordingly.

That is true not only of the Veiled Prophet's Pa-
rade, but of all parades which pass along the streets

in all towns and cities, which call forth throughout
the entire country large crowds of people. The line
of demarcation separating the people from the space
reserved for the parade, in the very nature of things,
is indicated by some frail or temporary structure, rope
or cable, anchored to the most convenient objects al-
ready existing, along the line thereof, or by picking
sentinels to give warning and keep the crowds back.

Should the law require permanent barriers or bar-
ricades along the streets upon such occasions, which
would physically withstand the great weight and force
of a crowd of people such as is described in the pe-
tition, should they see fit to throw their weight vio-
lently against it, the cost thereof would be so great
that no city or anyone else for that matter, could afford
to give an entertainment of this character, which is
for the pleasure and amusement of the people, with-
out profit to anyone.

The law required no higher degree of care of
those who gave or participated in this entertainment,
than that which is usually exercised by ordinarily pru-
dent persons under similar circumstances.

The petition in this case discloses the fact that this
parade was conducted in precisely the same manner,
as all know, that all such parades are conducted
throughout the State and country, with ropes or ca-
bles stretched along the edge of the sidewalks, at-
tached to trees, lamp posts, hitching posts, fences, elec-
tric-light, telephone and telegraph poles, or any other
object that may be standing along the line of the walk.

. It is not claimed that the injury in this case was
caused through the negligence of the defendants in
furnishing a weak and insecure pole for the anchorage
of the cable in question, but because the cable was tied
to the pole in question, which was suitable and suffi-
ciently strong for the purposes for which it was erected,
but not strong enough to withstand the great weight

and force of the crowd of people who pushed against the rope upon this occasion, which the respondents had no more reason to anticipate would be done, than did the plaintiff.

The petition states that the pole had been erected some time between September 27 and October 5, 1909, upon a granitoid sidewalk, by means of bolts set therein and secured by means of cement filled around them, and that they extended upward and through the base or flange or the lower end of the pole and were made fast thereto by means of nuts screwed down on said bolts and against the said base or flange; that said cement had not had sufficient time in which to set and properly harden prior to the time of the accident; that the respondents knew of or by the exercise of ordinary care, could have discovered that fact, in time to have prevented the injury; and that in consequence thereof the cement and bolts gave way, and the pole fell and injured plaintiff when the people threw their weight violently against the cable, which, as before stated, was fastened to the pole about four feet above the ground.

While the demurrer admits the truthfulness of those allegations, yet does it necessarily follow therefrom, that the respondents are liable for that negligence, if negligence it was? I think not; for the reason that the petition states that the pole was erected some time between September 27th and October 5th, a possibility of eight days.

With that knowledge coupled with the common knowledge that ordinarily cement sets and hardens and becomes as strong as it ever will in a much shorter time than eight days, can it be said that respondents could have reasonably anticipated that the cement in this case had not hardened in that time and that the weight and force of the people against the cable would have been sufficiently great to have pulled the pole from its fastenings in the sidewalk, when anchored as this one was? I think not.

I am, therefore, of the opinion that the judgment of the circuit court sustaining the demurrers was correct, and that it should be affirmed. It is so ordered. All concur.